UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

PERSEPHONE DOLCE and                    :          25-CV-2150 (AT) (RWL)
DARIUS GOODWORTH,                        :
                                         :
                    Plaintiffs,          :       **REPORT AND RECOMMENDATION**
                                         :        **TO HON. ANALISA TORRES:**
          - against -                    :        **EX PARTE MOTION FOR TRO**
                                         :
CERTIFIED LUXURY MOTORS,                 :
CLM AUTO GROUP, INC.,                    :
WORLDWIDE LUXURY ENTERPRISES INC.,       :
d/b/a CERTIFIED LUXURY MOTORS,           :
ALLY FINANCIAL INC.,                     :
NORTH SIDE CAR CARE CORPORATION,         :
FAWAD AWAN, JOHN DOES 1-3, and           :
JANE DOE,                                :
                                         :
                    Defendants.          :
------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

On March 14, 2025, Plaintiffs, pro se, filed the instant action against Certified

Luxury Motors ("CLM"), a car dealership, from which they purchased a used Mercedes

Benz; CLM Auto Group, Inc. and Worldwide Luxury Enterprises Inc., corporate entities

owning and operating CLM; Fawad Awan, Chief Executive Officer of CLM and its

corporate entities; Ally Financial, Inc., which purchased the Plaintiffs' car loan from CLM;

North Side Car Care Corporation, which passed the car for inspection; and John and Jane

Does, employees of the dealership (collectively, "Defendants").  The Complaint is not

verified but is detailed and supported with 51 exhibits.

Plaintiffs allege that the dealership made many misrepresentations about the car

and its financing; that the car had numerous defects that Defendants concealed and

which resulted in a tire blowout while driving at high speed on the FDR Drive; that

Defendants repeatedly obfuscated and refused to provide documentation concerning the

car and financial terms of the loan; and that Defendants failed to process the car's registration, thus making it illegal for Plaintiffs to drive the car. Plaintiffs also claim that Plaintiff Darius Goodworth's signature was forged on loan documents containing onerous terms of which Plaintiffs were not aware and that his personal information has been used without authorization in connection with credit transactions and inquiries, all of which has damaged his credit rating and reputation.

Plaintiffs further claim that the Defendants' actions are coordinated and widespread and that they have operated the scheme for years, taking advantage of other unsuspecting customers. According to Plaintiffs, CLM has an "F" rating from the Better Business Bureau, has been the subject of many customer complaints, and has been accused of fraudulent practices in several legal proceedings. The instant Complaint alleges an array of claims, including violation of the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964(c); federal criminal statutes prohibiting bank fraud, wire fraud, and mail fraud; the Truth In Lending Act, 15 U.S.C. § 1601 *et seq.*; the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*; the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*; and several violations of New York statutory and common law.

Plaintiffs seek extensive relief, including damages (statutory, compensatory, and punitive), and orders "permanently closing" and dissolving North Side Car Care; dissolving any business owned by Defendant Awan; banning Awan from "starting, acquiring, or operating any business within the region" for at least five years; referring Defendant Ally Financial for further investigation into fraudulent lending practices; establishing a restitution fund "to compensate all victims defrauded by [Defendants]";

referring "potential criminal violations to the appropriate law enforcement authorities"; and awarding reasonable attorneys' fees and costs.  (Compl. ¶¶ 461-73.)

Four days after filing their Complaint, Plaintiffs filed an ex parte application for a temporary restraining order and preliminary injunction seeking a wide array of relief, including (1) immediate processing of the car's vehicle registration; (2) immediate production of a copy of the vehicle's title; (3) disclosure of the John and Jane Doe Defendants' names; (4) restraining CLM, its associated corporate entities, and Awan from forming or acquiring any new business or transferring or relocating any ongoing business operations; (5) suspending Ally Financial's enforcement of the car loan; (6) prohibiting Ally Financial from doing anything that would negatively affect Plaintiffs' credit; (7) preserving all evidence; and (8) expediting discovery to allow Plaintiffs to serve subpoenas on Capital One Financial Corporation (for information about who added Plaintiff Goodworth as an authorized user to a particular account) and Ally Financial (for information about the loan).  (*See* Dkt. 18 at 6-11.)  Plaintiffs request that the Court waive any requirement for a surety bond that would be posted in conjunction with a TRO and preliminary injunction.  (*Id.* at 12.)  Plaintiffs argue that without immediate ex parte relief, "there is a high risk that Defendants would destroy, alter, or hide evidence, or otherwise frustrate the Court's ability to grant effective relief upon learning of this action."  (*Id.* at 5.)

In support of their motion, Plaintiffs have submitted two sworn statements.  One is an affidavit from a mechanic who assessed the condition of the Plaintiffs' car and made repairs costing $1,843.48.  (*See* Affidavit of Charles Eli Boumoussa, executed March 5, 2025, Dkt. 19.)  The other statement is from Plaintiff Goodworth, expressing concern that, if notified in advance, Defendants will conceal or destroy evidence, change business

identities, and retaliate. (*See* Declaration of Darius Goodworth, executed March 18, 2025, Dkt. 20 ("Goodworth Decl.").)

The matter has been referred to me for report and recommendation. (Dkt. 21.) For the reasons that follow, I recommend that Plaintiffs' ex parte motion be denied.

## Legal Standards

### A.    Standards For Temporary And Preliminary Injunctive Relief

Federal Rule of Civil Procedure 65 authorizes federal courts to issue temporary restraining orders and preliminary injunctions. Fed. R. Civ. P. 65. Preliminary relief "is an extraordinary remedy never awarded as of right." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24, 129 S. Ct. 365, 376 (2008). A preliminary injunction preserves the status quo and the rights of the parties until a final adjudication on the merits. *North American Soccer League, LLC v. United States Soccer Federation, Inc.*, 883 F.3d 32, 36 (2d Cir. 2018). The purpose of a temporary restraining order "is limited to preserving the status quo and preventing irreparable harm 'just so long as is necessary to hold a hearing, and no longer,' such that the court will be able to provide effective final relief." *Goldstein v. Hochul,* No. 22-CV-8300, 2022 WL 20305832, at *1 (S.D.N.Y. Oct. 3, 2022) (quoting *In re Vuitton et Fils S.A.*, 606 F.2d 1, 4 (2d Cir. 1979)).

In the Second Circuit, the criteria for granting a temporary restraining order and a preliminary injunction generally are the same. *Local 1814, International Longshoremen's Association v. New York Shipping Association*, 965 F.2d 1224, 1228 (2d Cir. 1992); *AFA Dispensing Group B.V. v. Anheuser-Busch, Inc.*, 740 F. Supp.2d 465, 471 (S.D.N.Y. 2010) ("It is well established that the standard for an entry of a temporary restraining order is the same as for a preliminary injunction"). A party seeking such relief must establish

(1) a likelihood of success on the merits, (2) a likelihood of irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in the movant's favor, and (4) that an injunction is in the public interest. *Pharaohs GC, Inc. v. United States Small Business Administration*, 990 F.3d 217, 225 (2d Cir. 2021) (citing *Winter*, 555 U.S. at 20); *see also Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010) (a party seeking a preliminary injunction must demonstrate: (1) "a likelihood of success on the merits or ... sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of hardships tipping decidedly in the [plaintiff's] favor"; (2) a likelihood of "irreparable injury in the absence of an injunction"; (3) that "the balance of hardships tips in the plaintiff's favor"; and (4) that the "public interest would not be disserved" by the issuance of an injunction). Where the movant seeks a "mandatory injunction" that will "alter rather than maintain the status quo," the movant "must meet the more rigorous standard of demonstrating a clear or substantial likelihood of success on the merits." *Johnson v. Connolly*, 378 F. App'x 107, 108 (2d Cir. 2010) (summary order) (internal quotation marks omitted) (quoting *Doninger v. Niehoff*, 527 F.3d 41, 47 (2d Cir. 2008)).

"A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (internal quotation marks and citation omitted). "To satisfy the irreparable harm requirement, Plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm," *Grand River Enterprise Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir.

2007) (internal quotation marks and citation omitted), or, for a temporary restraining order, until a preliminary injunction hearing is held.

When deciding a motion for a preliminary injunctive relief, "a court may consider the entire record including affidavits and other hearsay evidence." *Johnson v. Newport Lorillard*, No. 01-CV-9587, 2003 WL 169797, at *1 (S.D.N.Y. Jan. 23, 2003); *accord Mullins v. City of New York*, 626 F.3d 47, 52 (2d Cir. 2010) (holding that courts may consider hearsay evidence on motions for preliminary injunction).

## B.    Standards For Ex Parte Relief

Whereas a party moving for a preliminary injunction must provide advance notice to the adverse party, a party seeking a temporary restraining order need not do so in limited circumstances. *See Standard Microsystems Corp. v. Texas Instruments Inc.*, 916 F.2d 58, 62 (2d Cir. 1990) ("Where speed is needed, the rules of procedure provide for temporary restraining orders, even without notice, to prevent irreparable harm") (citing Fed. R. Civ. P. 65). A temporary restraining order may be granted without notice to the adverse party only if "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). The restrictions on the availability of ex parte temporary restraining orders imposed by Rule 65(b) are "stringent," *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 438-39, 94 S. Ct. 1113, 1124 (1974), and must be "scrupulously observe[d]." *Austin v. Altman*, 332 F.2d 273, 275 (2d Cir. 1964); *see also Broadrick v. Gilroy*, No. 24-CV-1772, 2024 WL 4723332, at *1

(D. Conn. Nov. 9, 2024) (recognizing that standards for ex parte temporary restraining order are both stringent and to be scrupulously followed).

## C.    Pro Se Status

As Plaintiffs are proceeding pro se, the Court construes their pleadings "liberally" and interprets them "to raise the strongest arguments that they suggest." *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam).  Pro se litigants, however, are not excused from complying with procedural rules.  *See Azzarmi v. Key Food Stores Co-Operative Inc.*, No. 20-CV-6835, 2021 WL 1734922, at *3 (S.D.N.Y. May 3, 2021) ("Pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law") (internal quotation marks and citation omitted); *Harley v. Nesby*, No. 08-CV-5791, 2011 WL 6188718, at *11 (S.D.N.Y. Dec. 12, 2011) (collecting cases and stating that "pro se parties are not excused from complying with procedural rules").

### Discussion

Plaintiffs' affidavits do not establish imminent or irreparable harm, which alone merits denying the injunctive relief they seek.  *See Grand River*, 481 F.3d at 63 ("We hold that the district court did not abuse its discretion in finding that Grand River failed to demonstrate sufficiently a likelihood of irreparable harm and, therefore, on that basis alone, affirm its denial of Grand River's motion").

Plaintiffs offer three primary reasons they contend justify ex parte, immediate relief: (1) expiration of the vehicle registration "rendering it illegal to drive" and "exposing Plaintiffs to potential fines, vehicle impoundment, and further financial harm"; (2) "vehicle safety defects and public safety risk" inasmuch as Defendants' misrepresentations about

the condition of the car "led to an actual tire blowout while in high-speed use on the FDR South"; and (3) the "risk of evidence destruction," particularly given Defendants' pattern of fraud and deceptive financial practices.  (Dkt. 16 at 2-3.)

None of those grounds establish the likelihood of immediate, irreparable injury sufficient to warrant a temporary restraining order, let alone one issued ex parte without notice.  First, although Plaintiffs may not be able to drive the car at issue due to lack of a valid registration, they have not demonstrated that they cannot otherwise transport themselves as needed.  For instance, they could rent a car.  Doing so would result in financial loss potentially recoverable as monetary damages but would not pose a likely threat of irreparable harm.

Second, the tire blowout and any misrepresentations about the car are past events. Plaintiffs know that driving the car may be hazardous and therefore can avoid driving it. There is no immediate threat to either Plaintiffs' or the public's safety.  *See Kane v. De Blasio*, 19 F.4th 152, 172 n.20 (2d Cir. 2021) (per curiam) ("Preliminary injunctions are appropriate only to prevent ***prospective*** harm until the trial court can decide the case on the merits") (emphasis in original); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (denying preliminary injunctive relief where plaintiff failed to establish likelihood of continuing harm); *Pirtek USA, LLC v. Zaetz*, 408 F. Supp.2d 81, 84 (D. Conn. 2005) (explaining that a past injury alone is insufficient to establish irreparable harm) (citing *Deshawn v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998)).

Third, an ex parte injunction will not materially decrease the risk that Defendants will destroy or conceal evidence.  That is because Plaintiffs have already repeatedly put Defendants on notice of their concerns and expressly warned Defendants that Plaintiffs

planned to take legal action.  As recounted in the Complaint, during mid-February to mid-March, 2025, Plaintiffs repeatedly confronted Defendants – by phone, by letter, and in person – with Plaintiffs' concerns about the car, requests for documentation, and demands for relief.  (*See, e.g.*, Compl. ¶¶ 94, 115, 119, 171, 200, 202, 227.)  Moreover, in a demand letter sent by email on February 18, 2025, and later by certified mail, Plaintiff Dolce provided CLM with "formal notice of my intent to initiate legal action" against CLM "for fraudulent misrepresentation, deceptive business practices, breach of warranty, and gross negligence in the sale of a dangerous, improperly inspected vehicle that put my life at risk." (Compl. Ex. A15 at ECF 128.)  The letter reiterated the warning at its end, stating that "[t]his is not an idle threat, it is a guarantee given the seriousness of the matter."  (*Id.* at ECF 129.)  Similarly, Plaintiff Goodworth sent a formal demand letter to Ally Financial stating that if Ally Financial did not comply with his many demands, Goodworth "will add Ally Financial as a defendant to the pending … [c]ase against the dealership for fraudulent lending, TILA violations, unjust enrichment, and aiding and abetting." (Compl. Ex. A23 at ECF 150.)

In other words, Plaintiffs have already put Defendants on notice of their claims and intent to file suit.  As a result, Defendants already are under a legal obligation to preserve documents, electronic information, and other potential evidence.  *See Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001) ("The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation"); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) ("Once a party reasonably anticipates litigation, it must suspend its routine document

retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents").  While actually being served with a lawsuit is not the same as being threatened with one, in this instance the Plaintiffs have already taken actions and made demands that would prompt Defendants to destroy or alter evidence if they were inclined to do so at their peril.   That the CLM Defendants have been named in several other litigations for similar conduct also diminishes the likelihood that ex parte, immediate relief in this instance would forestall destruction or concealment of evidence that had not already occurred.

The two affidavits Plaintiffs have submitted in support of their application do not move the needle with respect to irreparable harm.  The mechanic's affidavit speaks to the car's defects, damage, and repairs.  The affidavit may bolster Plaintiffs' claims on the merits; but it does not demonstrate the imminent threat of irreparable harm that cannot be addressed by money damages.

The Goodworth affidavit directly addresses irreparable harm in the absence of ex parte relief but does not advance the ball for the reasons already discussed.  For instance, Goodworth expresses concerns about risk of destruction and concealment of evidence. As a basis for those concerns, he refers to Defendants' having "consistently evaded and refused" to provide documentation requested by Plaintiffs on "multiple" occasions. (Goodworth Decl. at 2.)  He also recounts an encounter on February 24, 2025, when Defendant Awan told Plaintiff Dolce "Miss, you have a complaint open, so we're going to take our measures to have everything ready for you.  So we already know what we have to do." (*Id.*)  Goodworth asserts that Awan's statement, combined with Defendants' failure to provide documents, "suggests an intentional effort to obstruct, conceal, destroy, or alter

potential evidence." (*Id.*)  Those events, however, only demonstrate that Defendants already are on notice and "know what [they] have to do," whatever that means.  Ex parte injunctive relief is not likely to prevent anything that has not already occurred.

Goodworth also points to Awan's "history of changing his business identity … potentially to avoid liability for alleged fraud." (*Id.* at 3.)  Goodworth asserts that "[i]f given notice, Defendants may attempt to change their corporate name and structure to avoid liability." (*Id.*)  Putting aside the speculative nature of that assertion, *see Purgess v. Parauda*, No. 20-CV-2984, 2021 WL 2269540, at *3-4 (S.D.N.Y. June 3, 2021) (denying preliminary injunction where alleged irreparable harm was speculative), Plaintiffs have not explained how Defendants' changing their corporate identity ***after*** litigation has commenced could shield Defendants from liability for events that have already taken place or that would put assets out of reach to pay any judgment.  Whatever Defendants may try to do in that regard would likely be redressable through the laws of fraudulent conveyance, the alter-ego and veil-piercing doctrines, and other remedies.

Finally, Goodworth asserts that "[a] key witness, who will be made available at the Court's direction, has provided information that Defendants employ retaliatory tactics." (Goodworth Decl. at 4.)  Goodworth goes on to say that "[e]erily, on [sic] the week of March 9th, Plaintiff Goodworth's mother received a suspicious phone call at his upstate New York home.  The caller, who refused to identify themselves [sic], specifically inquired about Plaintiff Goodworth's whereabouts." (*Id.*)  Plaintiffs have not shown that the suspicious phone call either is connected to Defendants or suggests any threat of harm.  Nor have they provided anything to show that even if Defendants employ retaliatory tactics, what those retaliatory tactics might be or how they would pose any threat of

irreparable harm.  Goodworth's assertions fall well short of the "specific facts … clearly show[ing] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."  Fed. R. Civ. P. 65(b)(1)(A).

## Conclusion

To be clear, this report and recommendation makes no findings with respect to the merits of Plaintiffs' claims.  The conduct alleged in the Complaint, if true, is egregious and reprehensible.  Plaintiffs should and will have the opportunity to prove their claims. However, Plaintiffs have not established the requisite likelihood of irreparable harm to support issuing a temporary restraining order, let alone one issued ex parte.  Accordingly, I recommend that Plaintiffs' ex parte application for a temporary restraining order be DENIED.  I further recommend that, if the Court adopts this recommendation, Plaintiffs be directed to serve Defendants with (1) their respective summons, (2) the complaint, (3) the papers Plaintiffs filed in support of their ex parte motion for a temporary restraining order and preliminary injunction, (4) the instant Report and Recommendation, and (5) the Court's order of adoption.  To the extent not addressed above, the Court has considered Plaintiffs' arguments and finds them to be either moot or without merit.

## Deadline For Filing Objections And Preserving Appeal

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation.  Any party shall have fourteen (14) days to file a written response to the other party's objections.  Any such objections and responses shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Analisa Torres, United States Courthouse, 500 Pearl Street, New York, New

York 10007, and to the Chambers of the undersigned, at United States Courthouse, 500 Pearl Street, New York, New York 10007.  Any request for an extension of time for filing objections must be addressed to Judge Torres.  **Failure to file timely objections will result in a waiver of the right to object and will preclude appellate review.**

Respectfully submitted,

ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: April 1, 2025
       New York, New York

Copies transmitted this date to Plaintiffs and all counsel of record by electronic ECF service.